UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MURLIN R. PHILLIPS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:03CV00159-ERW |
| ) | |
| JON A. KISER, Wayne County Prosecutor, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Jon Kiser's Motion for Summary Judgment [doc. #50].

**I. BACKGROUND FACTS**[1]

Plaintiff Murlin R. Phillips ("Plaintiff") was arrested and charged with first degree murder and armed criminal action by the Wayne County Prosecuting Attorney's Office in October, 2000. At that time Defendant Jon A. Kiser ("Defendant") was the Prosecuting Attorney for Wayne County, and therefore prosecuted Plaintiff on the charges against him. Prior to conviction and sentencing on the crimes charged, Plaintiff was held by the Wayne County Sheriff's Department from October 9, 2000 to May 10, 2002. During that nineteen month period, Plaintiff was housed in both the Wayne County Jail and the Butler County Justice Center ("BCJC"). Specifically, Plaintiff was held in the BCJC from October 9, 2000 until December 12, 2000, from January 4, 2001 until March 2, 2001, from May 9, 2001 until May 14, 2001; and from May 21, 2001 until

---

[1]This recitation of the facts is taken from Defendant's and Plaintiff's statements of uncontroverted facts.

1

June 29, 2001. The remaining time Plaintiff was housed at the Wayne County Jail. The conditions at issue in this case relate to Plaintiff's time in the BCJC.

Plaintiff asserts that while he was housed at BCJC, he was located in F-pod, a housing unit where he was denied access to telephone privileges. In support of these allegations, Plaintiff has submitted a docket entry in his criminal case, that was filed by Defendant, restricting Plaintiff's telephone communications. *Pl.'s Response in Opp. to Def.'s Mot. for Summ. Judg.*, Ex 1. Furthermore, Plaintiff asserts that he was kept in solitary confinement for thirty days, which constitutes unlawful punishment. Defendant disputes this, stating that Plaintiff was held in solitary confinement for one day, due to Plaintiff violating jail rules.

## II. PROCEDURAL HISTORY

Plaintiff filed suit under 42 U.S.C. § 1983 against Defendant on December 23, 2003. Plaintiff alleged that he was unlawfully punished, prior to being found guilty of a crime, as a result of Defendant's actions in causing him to be transferred to another county's detention facility, causing him to be placed in solitary confinement, and causing the loss of his telephone privileges. Plaintiff also asserted, in his original complaint, that Defendant maliciously prosecuted him and denied him a fair trial and appeal by making false statements to the state court at a guilty-plea hearing. The case was originally before the Honorable Judge Stephen Limbaugh, who dismissed the case without prejudice because the complaint was legally frivolous or failed to state a claim upon which relief can be granted, or both [doc. #3]. Plaintiff appealed this decision, and the Eighth Circuit affirmed in part and reversed in part, in an order dated March 23, 2006. On remand, the case was assigned to the Honorable Judge Frederick R. Buckles, and subsequently transferred to this Court on June 14, 2006. Following discovery, Defendant filed the pending Motion for Summary Judgment on February 28, 2007. That motion is now fully briefed.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative

3

evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

### A. EIGHTH CIRCUIT OPINION

Before addressing the specific claims alleged by Plaintiff, it is important to summarize the Eighth Circuit's opinion in this case, as it is controlling on remand  The Eighth Circuit upheld the district court's dismissal in many respects. The court held that Defendant had absolute immunity with respect to the alleged false statements made to the state court. *Phillips v. Kiser*, Case No. 1:03CV00159-ERW, doc. #33, p. 2. The court further held that Plaintiff's claim that Defendant interfered with Plaintiff's defense was barred under *Heck v. Humphrey*, because "a favorable decision would call into question the fairness of his trial, thus undermining the validity of his conviction and sentence." *Phillips,* Case No. 1:03CV00159-ERW, doc. #33, p. 2 (citing *Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994)).

4

The Eighth Circuit then addressed Plaintiff's allegations that Defendant punished Plaintiff in contravention of the Constitution, by transferring him to another facility, placing him in solitary confinement, and limiting his telephone privileges. The court held that these claims were not *Heck*-barred. *Phillips,* Case No. 1:03CV00159-ERW, doc. #33, p. 2 ("[C]laims based on Phillip's allegations that Kiser ordered him transferred and placed in solitary confinement to punish him, rather than to impair his defense, were not *Heck*-barred."). The Eighth Circuit then addressed whether the allegations, that Defendant acted to punish plaintiff, were sufficient to survive frivolity review. The court concluded that "Phillips did not have a liberty interest in avoiding transfer to another detention facility. . ., or in having unrestricted telephone privileges . . .." *Id.* at 2-3. Therefore these claims were properly dismissed. However, the court concluded "that he [Plaintiff] stated a claim based on Kiser's alleged involvement in ordering the solitary confinement to punish him." *Id.* at 3. Therefore, the only claim remaining on remand is whether Defendant's involvement in Plaintiff being placed in solitary confinement was done to punish Plaintiff, in violation of his right to due process.

### B. SOLITARY CONFINEMENT

Much of Plaintiff's briefing addresses Defendant's involvement in restricting his telephone communications. However, as recited above, the Eighth Circuit held that this restriction did not survive frivolity review and was properly dismissed by the district court. The only matter before this Court is whether the Defendant was involved in impermissibly punishing Plaintiff, by placing Plaintiff in solitary confinement. Defendant asserts that he was not involved in the decision to place Plaintiff in solitary confinement, and therefore is entitled to Summary Judgment; alternatively, Defendant argues that placing Plaintiff in solitary confinement was not a violation of due process, as it was in furtherance of a legitimate government interest.

Plaintiff's complaint raises the question of whether his conditions of confinement prior to trial violate the due process clause of the Fourteenth Amendment.[2] *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). It is undisputed that the government may detain an individual who has not yet been charged in order to ensure the individual's presence at trial. *Id.* at 536-37 ("the Government concededly may detain him to ensure his presence at trial . . .."). However, it is also undisputed that the government may not subject a pretrial detainee to punishment. *Id.* at 536. Detention, by its very nature, "interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible." *Id.* at 537. This alone does not "convert the conditions or restrictions of detention into 'punishment.'" *Id.* While it is clear that detention is permitted, the Court must determine whether there is a genuine issue of material fact regarding the conditions to which the Plaintiff was subjected.

As an initial matter, the Court looks at whether the Defendant had any part in the decision to place Plaintiff in solitary confinement. *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976) ("The

---

[2]In his memorandum in support of his motion for summary judgment, Defendant cites to numerous cases which address prison conditions under the Eighth Amendment. *See Def.'s Memo. in Support of Def.'s Mot. for Summ. Judg.*, p. 12-14. Although Defendant is correct that pretrial detainees are "entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment[,]" *Id.* at 12 (citing *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983)), this does not mean that because Plaintiff's conditions of pre-trial confinement did not violate the Eighth Amendment they also did not violate the Fourteenth Amendment. Therefore, Defendant's reliance upon Eighth Amendment jurisprudence is misplaced. The Fourteenth Amendment protects against a liberty interest being denied without due process, opposed to the more stringent requirement that a convicted prisoner not be subjected to cruel and unusual punishment. The Court will focus only on Fourteenth Amendment precedent.

plain words of the statute [42 U.S.C. § 1983] impose liability . . . only for conduct which 'subjects or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." (citing 42 U.S.C. § 1983)); *see also Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). As summarized above, the only condition at issue, is Plaintiff being subjected to solitary confinement. Defendant submitted his own affidavit, as well as affidavits of Larry Plunkett, Sr., Sheriff of Wayne County, Missouri during 2000 through 2002, and Carrie Tomlinson, Chief of Corrections for BCJC, in support of his motion for Summary Judgment. *Defs. Mot. for Summ. Judg.*, Exs. A-C. These affidavits show that it was the decision of the Wayne County Sheriff Department to transfer Plaintiff from the Wayne County Jail to BCJC, and that Defendant played no role in this decision. *Defs. Mot. for Summ. Judg.*, Ex. B, ¶¶7, 9. Furthermore, Ms. Tomlinson testified in her affidavit that there are no records of any communication between Defendant and BCJC regarding the placement of Plaintiff. *Id.* at Ex. C, ¶¶5-6. Plaintiff has not submitted any evidence that refutes Defendant's evidence. The only evidence submitted by Plaintiff is an entry in the state court proceeding limiting Plaintiff's telephone communications, however, that is not at issue before this Court. Plaintiff has failed to prove any direct involvement between Defendant and the condition complained of, and therefore, Defendant is entitled to summary judgment.[3]

---

[3]The Court also notes, that even had Plaintiff provided evidence of Defendant's involvement in the decision to place Plaintiff in solitary confinement, the evidence is insufficient that this condition constituted punishment. Plaintiff correctly cites to *United States v. Gotti*, where the district judge held that placing a pretrial detainee in administrative segregation is punishment when it is based only on the crimes with which the detainee is charged and the subjective belief of the corrections officer. 755 F.Supp. 1159, 1164-1165 (Stated reason for administrative segregation was "the nature of the current charges including multiple murders, conspiracy and solicitation to murder and obstruction of justice. . ..") The Court concluded this is insufficient, otherwise every person indicted for such crimes would be placed in administrative

## V. CONCLUSION

The Court concludes that Plaintiff has failed to present evidence of a genuine issue of material fact on his due process claim, and therefore Defendant is entitled to judgment as a matter of law. There is no evidence that Defendant was involved in the decision to place Plaintiff in solitary confinement, and therefore he cannot be held responsible for that action. Furthermore, the prison staff had a legitimate objective, keeping control of the prison facility, in the action taken, and therefore there was no due process violation. Based on this conclusion, Defendant is entitled to judgment against Plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #50] is **GRANTED**.

Dated this 26th Day of June, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

segregation.). Unlike the facts in *Gotti*, the evidence provided by Defendant supports the conclusion that Plaintiff was placed in solitary confinement for one day, due to his violation of prison rules, not because of the nature of the crime charged. *Def.'s Mot. for Summ. Judg.*, Ex. C-1, p. 2-3. The Eighth Circuit in *Smith v. Copeland*, held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" 87 F.3d 265, 268 (8th Cir. 1996). In this case, the action taken by the BCJC staff was justified in order to maintain a controlled environment within the prison. Such an objective is clearly legitimate, and therefore does not violate Plaintiff's due process right to be free from punishment prior to sentencing.